## Pennsylvania Utilities Co. v. Mt. Bethel Milling Co.

*Practice, J. P.—Affidavit of claim—Act of July 7, 1879.*

1. Where the record shows that summons and affidavit of claim under the Act of July 7, 1879, P. L. 194, were issued at the same time to a constable, and the record shows return of the service of the summons and affidavit of claim at the same time, there is a sufficient compliance with the act as to time.

2. The treasurer of a corporation or the assistant treasurer may make the affidavit of claim under the act without setting forth that he is cognizant of the facts constituting the cause of action. It is to be presumed that the holder of the office is cognizant of the facts.

3. The affidavit of claim must set forth in a concise and summary form the material facts on which the plaintiff relies for its claim.

*Certiorari* to judgment of alderman. C. P. Northampton Co., Sept. T., 1921, No. 70.

*Smith, Paff & Laub,* for plaintiff; *George W. Geiser, Jr.,* for defendant.

STEWART, P. J., Oct. 3, 1921.—This is a *certiorari* to the judgment of an alderman. Judgment was entered for want of a sufficient affidavit of defence under the provisions of the Act of July 7, 1879, P. L. 194. It has always been held upon *certiorari* that the provisions of the Act of 1879 must be strictly complied with. In Murdy *v.* McCutcheon et ux., 95 Pa. 435, the Supreme Court took jurisdiction of the case under the act, although in Huntington and Broad Top Mountain R. R. Co. *v.* Fluke, 32 Pa. Superior Ct. 126, President Judge Rice of the Superior Court showed that the Supreme Court had evidently overlooked the fact that they had no jurisdiction, and that the judgment of the Common Pleas was final in *certiorari*. In Fell *v.* Leach, 15 Dist. R. 223, it was held: "The Act of July 7, 1879, P. L. 194, authorizing an alderman to render judgment for want of an affidavit of defence, provides a new remedy in derogation of the common law, its provisions must be strictly complied with, and the record must affirmatively show that they have been, otherwise the alderman is without jurisdiction." To the same effect is Hall *v.* Smitheman, 26 Dist. R. 203. No case has been cited which shows a departure from what has been held in those well decided cases. Thirteen causes of demurrer were assigned. The first and second causes are to the effect that the record does not show that the affidavit of claim was filed before the summons was issued, nor that it was delivered to the constable. The record shows July 19, 1921, summons and affidavit of claim issued to Harry P. Brown, constable. Then follows the return of the service of the summons and affidavit of claim by the same constable. As far as delivery is concerned, nothing could be more explicit. As to time, while the act reads: "If the plaintiff shall file, at any time before the issuing of the summons in any such case, an affidavit," etc., yet that clause must be read in connection with the following clause which requires the alderman to make a copy of the affidavit certifying its correctness, and to deliver it to the constable, which copy must be served at the same time as the summons is served. The purpose of all those provisions is to prevent the issuing of a summons, and then, a day or two afterwards, allow an affidavit of claim to be filed, and the officer to make service of the summons at one time and the affidavit of claim at any other time. Where the record shows what is shown *supra*, it is in strict conformity with the act. The third cause of demurrer is that the record does not show that there was a demand for payment made before suit. That is not required, either by law or by the act. The fourth and fifth causes are to the effect that there is no averment as to whether the plaintiff and defendant are individuals, partnerships or

corporations. This is not necessary. For the purpose of suit, as provided by the act of assembly, they are presumed to be corporations. The eighth cause of demurrer is, that the affidavit of claim served upon the defendant, and attached to the exception and made a part thereof, is not a duly certified copy. Overlooking the irregularity suggested by the learned counsel for the plaintiff of considering the copy served on the defendant because it might contradict the record, it seems to us the copy might be considered, if it were essential, under the authority of Minogue v. Ashland Borough, 14 Dist. R. 464, where President Judge Bechtel reviews all the authorities on the subject; nevertheless, careful inspection of the two papers shows that the difference between the two is immaterial. The alderman has certified of record that it is a true and correct copy. It, however, appears from inspection, that in the body of the original affidavit J. W. Weisel, Jr., is referred to as the treasurer of the Pennsylvania Utilities Company. When he signed it, he signed J. W. Weisel, Jr., Asst. Treasurer. The copy served omits the word "Asst." That is the only variance, and it is an immaterial one, in our judgment, under the view which we take of the ninth cause of demurrer. The ninth cause of demurrer is, that the affidavit does not set forth that the person who made it was cognizant of the facts. The act of assembly, in the first part, refers to an affidavit which shall be made by the plaintiff. Then it contains this proviso, "provided that the affidavit required by this section may be made by the agent of the party, where such agent is cognizant of the facts constituting the cause of action," etc. The learned counsel for the defendant contends that the treasurer of the corporation is but the agent of the corporation. It is true that it has been so held in many cases where the power of the corporation to contract or to enter into engagements is concerned, but where the corporation brings a suit such as this, the proper party to swear to the affidavit is the treasurer. In this case he really is the plaintiff. Referring to an affidavit of defence made by a manager in Andrews v. Blue Ridge Packing Co., 206 Pa. 370, Mr. Justice Mitchell said: "Tested by this standard, the first affidavit of defence was sufficient. It was made by the business manager of the defendant in positive terms. As such officer he must be presumed to be acquainted with the facts, and as he took the responsibility of swearing positively as of his own knowledge, it was unnecessary for him to set forth his information and belief: Newbold v. Pennock, 154 Pa. 591; Wolf v. Jacobs, 187 Pa. 260." The same thought was expressed by Judge Endlich in Fire Ins. Co. v. Keller, 7 Northamp. Co. Repr. 146, as follows: "The making of the affidavit by an agent of the plaintiff is expressly permitted by the Act of 1879, and in the case of a corporation unavoidable. The recital of his office of secretary is in itself an averment that he is cognizant of the matters he deposes to, that office necessarily involving a knowledge thereof." In Kingan Prov. Co. v. Manganiello, 20 Luzerne Legal Reg. Reps. 451, 49 Pa. C. C. Reps. 91, it was held: "In an action on book account for goods sold and delivered, affidavit to statement may be made by plaintiff's book-keeper, who presumably has knowledge of facts, though it is not so stated in affidavit." True, there are some authorities the other way (see Knight v. Smithson, 8 Pa. Justices' Law Repr. 176), but we hold, after examining them, that, where the averments are direct and positive, as in this case, affidavit may be made by the treasurer or the assistant treasurer. The sixth, seventh, tenth, eleventh, twelfth and thirteen causes are to the effect that the affidavit of claim does not set forth in a concise and summary form the material facts on which the plaintiff relies for its claim. If any authorities are required as to the necessity of these requirements, they may be found in Fire Ins. Co. v. Keller, 7

Pennsylvania Utilities Co. v. Mt. Bethel Milling Co.

Northamp. Co. Repr. 146, and Hall v. Smitheman, 26 Dist. R. 203. When the affidavit of claim is examined, it will be perceived that it is difficult to determine whether the suit was on a book account or on a contract. It is difficult to imagine a suit on a book account for the recovery of the price of electrical power. Electrical power is surely not goods. It is not merchandise. It is as difficult to define as it was difficult to answer a question asked an expert in a case before us: "What is a watt?" Suits on book accounts have a well-understood meaning: See authorities collected by President Judge Sadler in Hall v. Smitheman, 26 Dist. R. 203, and by Judge Henderson in Daniels's Estate, 29 Dist. R. 131. If it were on a special contract, the contract should be set forth. If there was no special contract to furnish electrical power, and the same was furnished in the regular course of business, then the technical averments fitted to such cases should be used, that the prices charged are reasonable and the usual charges. In Murphy v. Taylor, 173 Pa. 317, that form was approved, and in the late case of Bethlehem Steel Co. v. Topliss, 249 Pa. 417, the contrast between the phraseology of the statement of claim and the affidavit of defence is plainly seen. The syllabus of that case is as follows: "In such case, a claim or set-off for the cost of perfecting certain materials furnished by plaintiff, which were averred to be defective, was insufficient, where, although the amount and cost of the work done, including the amounts paid for labor, etc., were set forth, it was not alleged that the charges for labor were the reasonable or usual charges, or that the prices paid for the materials represented the fair market prices thereof." We do not think that the words "just, legal and proper charges" are equivalent to the expression insisted on by the Supreme Court. For this reason, and because the statement is not a concise and summary one, we sustain the last-mentioned causes.

And now, Oct. 3, 1921, the sixth, seventh, tenth, eleventh, twelfth and thirteenth causes of demurrer are sustained and judgment is reversed.

From Henry D. Maxwell, Easton, Pa.